### 9602.  WHITES *v.* STATE OF GEORGIA.

In a statutory proceeding to condemn or confiscate a vehicle employed in the illegal transportation of liquor contrary to the provisions of section 20 of the act of 1917 (Ga. L. Ex. Sess. 1917, p. 16), where the owner of the vehicle had previously sold it to the party engaged in the illegal transaction, but reserved title to it until full payment of the purchase-price, part of which purchase-price was represented by a retention-of-title note duly recorded, and the remainder of which was by agreement to be covered by a similar note in case the vendee failed to pay the remainder on or before a date specified, and where the evidence disclosed that the vendors were wholly without knowledge of the illegal intent or acts of the vendee, and the property was seized in behalf of the State before the agreed time when the second note reserving title was to be executed in the event that the amount to be covered thereby had not been previously paid, the owner would be entitled to the full amount of the purchase-money due, as might appear from the evidence, including both the amount covered by the note actually given and the note agreed to be given.

DECIDED JANUARY 14, 1919.

Condemnation under liquor law; from city court of Dublin—Judge Flynt. February 16, 1918.

*Burch & Daley, J. B. Green,* for plaintiffs in error.

*S. P. New, solicitor,* contra.

WADE, C. J. This case arose under the act of 1917 (Ga. L. Ex. Sess. 1917, § 20, p. 16), which provides that "All vehicles and conveyances of every kind and description which are used on any of the public roads or private ways of this State, . . in conveying any liquors or beverages, the sale or possession of which is prohibited by law, shall be seized by any sheriff or other arresting officer, who shall report the same to the solicitor of the county, city or superior court having jurisdiction in the county where the seizure was made, whose duty it shall be within ten days from the time he received said notice to institute condemnation proceedings in said court by petition, a copy of which shall be served upon the owner or lessee if known, and if the owner or lessee is unknown notice of such proceedings shall be published once a week for two weeks in the newspaper in which the sheriff's advertisements are published. If no defense is filed within thirty days from the filing of the petition, judgment by default shall be entered by the court at chambers, otherwise the case shall proceed as other civil cases in said court. Should it appear upon the trial of the case that said vehicle, [or] conveyance, . . was so used with the knowledge of the owner or lessee, the same shall be sold by order of the court after such advertisement as the court may direct."

The case was determined by the trial judge without the intervention of a jury, upon the following agreed statement of facts: "1st. That V. Chavous, a policeman of the City of Dublin, Georgia, did on the 19th day of January, 1918, arrest one O. E. Beachman and seize one automobile, described as follows: Oakland Roadster automobile #370212.4, motor #10751; and that at [that] time . . the said Beachman was carrying in said automobile whisky over the highways of Laurens county and into the City of Dublin, Georgia; that the said V. Chavous made said seizure and arrest without a search warrant, State warrant, or any legal process whatever. 2d. That the said O. E. Beachman is the conditional owner of the said automobile, having purchased the same from Whites, the intervenors herein; that he owes the said firm the sum of $815 and interest on the purchase-price of said automobile,

and executed to the Whites a note reserving the title in them until they were paid; said note being for the amount of $515 and interest. 3d. That in addition to the sum represented by the above-stated note, Beachman is due on the purchase-price of said automobile the sum of $300, which said sum he agreed to pay on the 21st day of January, 1918; or, in lieu of making said payment, he was to give a note reserving title to said automobile in the Whites for the principal sum of $300. 4th. That the said sums as above set forth are now due and unpaid. 5th. That the following is a true and correct copy of the said reservation of title note given by said Beachman to the said Whites, to wit: '$515. . . Dublin, Ga., January 14th, 1918. . . On February 10th after date I promise to pay "Whites," or order, five hundred fifteen and no/100 dollars, payable as follows: $200 on Feb. 10th, 1918, $165 on March 10th, 1918, and $150 on April 10th, 1918, with interest from date at 8 per cent. per annum, interest payable annually, for one Oakland Roadster, #3702124, Motor #10751. The title to said property to remain in said payee, his heirs and assigns until fully paid for. If said property is lost or destroyed in any way, I am still to pay this note, and all costs and attorney's fees incurred in its collection, which costs and fees I hereby agree to pay. And to secure the payment of this note. . . hereby mortgage and convey unto said payee, his heirs and assigns, the following property, to wit: . . . . I hereby waive for myself and family all rights or benefits of homestead or exemption of personality as against this debt or any renewal thereof. Witness my hand and seal the day and year above written. [Signed] O. E. Beachman (L. S.). Witness: C. A. Shepard, Com. N. P. L. Co. Ga.—State of Georgia, Laurens County. Clerk's Office, Superior Court. Filed for record at 8 o'clock a. m., this 23rd day of Jan'y, 1918, and recorded in Book 90, folio 684, this 25th day of Jan'y, 1918. E. S. Baldwin, Clerk.' 6th. That the Whites had no knowledge of the fact that said automobile was being used as a whisky carrier by the said O. E. Beachman, neither did they know, at the time they sold said automobile to the said O. E. Beachman, that he intended to use said automobile for said purpose. 7th. That V. Chavous said that he would pay the Whites the amount of its written reservation title, which was refused."

The court rendered judgment condemning the automobile that

had been seized, and ordering that it be sold, and that from the proceeds of such sale the sum of $515, principal and interest, be paid on the claim of Whites, a partnership composed of certain named persons, which had filed the intervention claiming a total sum of $815, as purchase-money thereof. This judgment was excepted to generally, as being contrary to both law and evidence, and more specifically upon the ground that the court was without authority to order the sale of the automobile without providing for the payment to Whites of not only that portion of the purchase-price included in the retention-of-title note of record, but the full amount due that firm upon the purchase-price. The judgment was further specially excepted to upon the ground that the lien under the reservation-of-title note was superior to any lien which the State of Georgia might obtain by reason of the illegal use of the automobile by the vendee, O. E. Beachman, for the full amount due on the purchase-price thereof; and that the judgment was contrary to law in that it condemned the interest of Whites in said automobile without showing any knowledge on their part that the automobile was to be used for any illegal purpose; and that the court was without authority to condemn the car when not in its possession, custody, or control.

It is agreed in the brief of counsel for the State that no construction of the act of 1917, supra, is necessary for the determination of this case, since under the agreed statement of facts and the assignment of errors in the bill of exceptions, but one question is really presented, and that is, should Whites have had a judgment for $515, or for $815.

In the case of *Shrouder* v. *Sweat,* 148 *Ga.* 378 (96 S. E. 881), the Supreme Court held: "Where an automobile was sold on credit to one who gave his note for the purchase price, securing it by a mortgage upon the car, and where subsequently, before payment of the note, the purchaser being engaged in conveying intoxicating liquors in the car, a sheriff arrested and took him and the car into custody, and thereupon instituted proceedings to condemn the car under the provisions of section 20 of the act of the General Assembly of this State, passed at its extraordinary session of March, 1917, relating to prohibition of intoxicating liquors, approved March 28, 1917 (Acts of General Assembly, Extraordinary Session, March, 1917, p. 7), a court of equity, upon a petition for

12

injunction brought by the holder of the mortgage, who did not participate in any way in the criminal enterprise of the purchaser, should have enjoined the condemnation proceeding until provision was made for application, after the final hearing, of the funds arising from the sale of the vehicle to the lien of the mortgage." In the decision the court said further: "We are of the opinion that the judge erred in so refusing. The condemnation proceedings should have been enjoined, and the status quo preserved until the final hearing, when a decree upon the facts as then shown could have been rendered. The petitioner was the vendor of the car, and had a valid mortgage thereon for the purchase money. He had not participated in the criminal intent of the purchaser of the car, who was in possession thereof at the time it was seized while being used for the carrying out of the criminal enterprise whereby it was subject to seizure and confiscation. The vendor, the petitioner and the holder of the valid mortgage, could not intervene in the statutory proceeding instituted in the city court for the purpose of condemning the car and to procure an order for its sale. His only redress for the enforcement of a clear equitable right was through an equitable petition, such as he filed in this case. The mortgage had not been recorded, but that did not affect its validity. Unrecorded mortgages remain valid, but 'are postponed to all other liens created or obtained, or purchase made prior to the actual record of the mortgage.' · Civil Code, § 3260. The provisions of the section of the act of March 28, 1917, to which we have referred, and under the terms of which the condemnation proceedings were instituted, is penal in its nature. We do not think it was the intention of the legislature to divest and destroy liens held by innocent third parties. The fact that the mortgage in this case was unrecorded may be considered in connection with any other evidence, if it should be produced on the trial, tending to show that the holder of the lien participated in the criminal enterprise or intent of the purchaser of the car; and if it should be made to appear that the vendor did participate in the criminal intent and enterprise, it may then be decided whether he had any standing in a court of equity."

In that case the petitioner, who applied for an injunction, held simply an unrecorded mortgage for the purchase-money of the vehicle sought to be condemned. The act of 1917 supra makes no

provision for the determination in the statutory proceeding of the rights of one claiming a valid *mortgage* upon an automobile or other vehicle about to be confiscated and condemned; and hence, as held by the Supreme Court, in the case above referred to, the doors of a court of equity should not be closed against such holder of a valid lien; and this notwithstanding the fact that the lien was not of record. In the case under consideration, the parties filing the intervention brought themselves within the terms of the act by showing that they were the actual *owners* of the property sought to be condemned, and their rights could therefore be determined in that proceeding, and without resorting to equity. It appears that under the contract of sale between Whites and Beachman, $515 of the purchase-price was evidenced by a retention-of-title note describing the property sold, which was duly recorded, and that the remainder of the purchase-money, amounting to $300, was not represented by any writing whatsoever. Nevertheless, it was distinctly agreed by the vendors and vendee, at the time the automobile was purchased, that the title to the same was reserved until the *full* sum of $815 was paid, the agreement between them being that in the event the vendee failed to pay the sum of $300 in excess of the note for $515, actually signed, on or before the 21st day of January, 1918, the vendee should thereupon execute a further note to the vendors, reserving title in them for said additional sum. The contract of sale between Whites and Beachman for the full amount of the purchase-price of the automobile was enforceable, so far as *they* were concerned, whether evidenced by any writing or not. All the conditions of the contract between the parties were in fact enforceable, except as against third parties. Civil Code (1910), § 3318.

Of course, the secret understanding between Whites and Beachman touching the $300 of the purchase-price not represented by any duly-recorded retention-of-title contract could have had no binding effect upon any third person acquiring contract rights against the property without knowledge of such understanding. Here, however, the State is seeking not even to enforce a judgment already obtained, but to obtain a judgment binding property to which the party whose illegal use thereof rendered it prima facie subject to condemnation had absolutely no title whatsoever. Even had there been no written contract of any kind, but merely an oral

agreement between Whites and Beachman that the title to the automobile should remain in the vendors until payment of the full purchase-price of $815 on or before a time named, and the vendee immediately upon the delivery of the machine to him engaged in the transportation of liquor, contrary to law, this would furnish no reason, under the provisions of the confiscation act, why the venders, who were wholly ignorant at the time of the sale of the intention of the vendee to thus illegally use and employ their property, and who in no wise thereafter consented to such illegal employment, should be compelled to suffer its entire loss. In the case as made, however, the vendors actually retained title in a legally sufficient instrument, which was duly recorded, though it covered only a portion of the purchase-price.

The agreed statement of facts discloses that Whites had absolutely no knowledge of the illegal use of the car or of the intention of the purchaser to employ it in any unlawful manner. Section 20 of the act of 1917, supra, provides that vehicles, conveyance, etc., shall be sold by order of the court in the event it appears upon the trial of the case that they were used in the manner prohibited thereby, "with knowledge of the owner or lessee."

Applying the principle laid down in the *Shrouder* case, supra, the decisions of the Supreme Court being binding as precedents upon this court, we hold, as the retention-of-title contract between Whites and Beachman was valid and enforceable between them for the full amount of the purchase-price agreed to be paid before the title to the automobile should vest in Beachman, that Whites were entitled to all of the said agreed purchase-price, and not merely to that portion represented by the recorded note. If Whites were entitled to exact the payment to them of the $515 portion of the purchase-price represented by the recorded note, they were equally entitled to the remaining $300 of said purchase-price due them in excess of said note, which under the terms of the contract of sale must also have been paid by Beachman before any title would vest in him. Clearly the State occupied no better position with respect to the portion of the purchase-price not covered by any written instrument of record than a third person would occupy who had extended no credit, parted with no rights, and suffered no injury by reason of the apparent ownership by the vendee of property in fact owned by some one else.

We hold, therefore, that the court erred in rendering the judgment complained of, since, under the agreed statement of facts fixing at $815 the amount of the purchase-price, until the full payment of which title to the property was reserved in Whites, they were entitled to collect the full amount.

*Judgment reversed. Jenkins and Luke, JJ., concur.*